µ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>JOHNNIE GARRETT,<br><br>Petitioner,<br><br>v.<br><br>DONALD GAETZ, Warden,<br>Pinckneyville Correctional Center,<br><br>Respondent. | No. 11 C 7301<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Johnnie Garrett ("Petitioner") filed a petition pursuant to 28 U.S.C. § 2254 (the "Petition") challenging his 2007 arson conviction in Cook County, Illinois. (R. 7, Pet.) This Court previously concluded that the Petition was not timely filed in accordance with 28 U.S.C. § 2244(d). (R. 18, Min. Entry.) Petitioner now requests that the Court deem the Petition timely by applying the doctrine of equitable tolling. (R. 32, Pet'r's Mot. to Allow Equitable Tolling.) For the reasons stated below, the motion is denied.

## RELEVANT FACTS[1]

Petitioner was arrested on November 14, 2004, and charged with aggravated arson. (R. 16-2, Ill. App. Ct. Order at 1.) In February 2005, Petitioner's public defender requested that Petitioner undergo a mental examination to determine whether he was competent to stand trial. (*Id.* at 2; R. 16-3, State Ct. Dkt. at 2.) Dr. Susan Messina, a licensed clinical psychologist, was appointed by the court to examine him, and she found him fit to stand trial. (R. 16-2, Ill. App. Ct. Order at 2.) Petitioner's attorney then requested a second opinion. (*Id.*) In July 2005, the

---

[1] In deciding the Petition, the Court must presume the facts set forth by the state court are correct. 28 U.S.C. § 2254(e)(1).

1

court ordered a second examination. (R. 16-3, State Ct. Dkt. at 3.) Dr. Carol Flippen, a forensic psychiatrist, examined Petitioner; she too concluded that he understood the nature of the charges against him and the court proceedings, and that he was fit to stand trial. (R. 16-2, Ill. App. Ct. Order at 2.) Dr. Flippen noted that Petitioner was having difficulties getting along with his attorney, but she did not attribute them to a mental illness. (*Id.*) Rather, in her view the conflict was caused by a difference of opinion Petitioner was having with counsel over the proper defense strategy. (R. 38-1, Dr. Flippen's Report at 110.) In January 2006, the results of the two competency examinations were discussed in court. (R. 16-2, Ill. App. Ct. Order at 2-3.) The following exchange occurred between the court and Petitioner's trial attorney:

> The Court: The Defendant has not ever been anything according to the doctors but fit for trial, legally sane and able to understand Miranda at the time of questioning.
>
> [Counsel]: That's fine, because I have been to visit him, [and] he does appear to understand the nature of the charges and cooperates with counsel.
>
> The Court: I don't believe there's any genuine issue of fitness before the Court or with Counsel is that correct, Counsel?
>
> [Counsel]: Yes.

(*Id.* at 3.)

At a court hearing in March 2006, Petitioner asked the court to appoint a different attorney to represent him, stating that he was dissatisfied with counsel's performance, in part because counsel had requested the two mental examinations. (*Id.*) The court denied his request, stating that the court agreed with counsel's decision to request the mental examinations. (*Id.*) Later that same month, Petitioner's counsel filed a motion to suppress statements Petitioner had made following his arrest. (*Id.*) Following a hearing, the motion was denied. (*Id.*) After the motion was denied, Petitioner complained to the court that his counsel had not permitted him to

testify in support of the motion. (*Id.*) The court then reopened the motion and permitted Petitioner to testify. (*Id.*) After hearing the additional evidence, the court denied the motion a second time. (*Id.*)

At a subsequent court hearing, Petitioner requested to see a psychiatrist because "he thought the Assistant State's Attorney assigned to the case was crazy." (*Id.* at 4.) The court construed this as a request for another competency examination. (*Id.*) In June 2006, the trial court ordered a third mental examination. (R. 16-3, State Ct. Dkt. at 6.) At the next status date, before the examination had been conducted, the court stated that it had learned that Petitioner did not cooperate with Dr. Flippen at the prior examination; the judge instructed Petitioner to fully cooperate during the third examination. (R. 16-2, Ill. App. Ct. Order at 4.) Petitioner responded that he "wanted to take Haldol and Cogentin" because he was "all messed up in the head." (*Id.*) Petitioner was later evaluated by Dr. Flippen. (*Id.*) Her subsequent report found that Petitioner was fit to stand trial, that he understood the nature of the charges and the court proceedings, and that he was able to assist his attorney "should he choose" to do so. (*Id.* at 5.)

In August 2007, a bench trial was held. (*Id.*) The state presented testimony from a witness who saw Petitioner leaving an apartment building shortly before it caught on fire, as well as testimony from a resident of the building who described waking up to find flames in the hallway. (*Id.*) A police officer and an assistant state's attorney testified regarding incriminating statements Petitioner made after his arrest, specifically, that he "had been assaulted by residents of the building the previous week and was trying to get back at them by starting the fire." (*Id.* at 6.) Petitioner testified in his own defense, claiming that the arresting officers had tricked him into confessing by falsely promising that he would only be charged with a misdemeanor if he

admitted to starting the fire. (*Id.*) At the close of the evidence, the trial court found Petitioner guilty of aggravated arson and sentenced him to 25 years in prison. (*Id.*)

Petitioner filed a direct appeal. (*Id.* at 6.) Through appointed counsel, he raised the following arguments: (1) his trial attorney was ineffective in failing to request a mental fitness hearing; (2) the trial court erred in failing to *sua sponte* order a mental fitness hearing; and (3) the trial court abused its discretion in imposing a 25-year sentence. (*Id.* at 6-13.) The Illinois Court of Appeals rejected the first two arguments based on the fact that two independent doctors had evaluated Petitioner a total of three times and found him to be competent. (*Id.* at 6-10.) As to the third argument, the appellate court found Petitioner's sentence proper in light of his "lengthy criminal history," and the fact that he had engaged in "vigilante behavior." (*Id.* at 12-13.) Accordingly, on July 20, 2009, the court affirmed Petitioner's conviction and sentence in all respects. (*Id.* at 1, 13.) Petitioner did not seek further review in the Illinois Supreme Court. (R. 7, Pet. at 2; *see also* R. 22, Order at 1-2.) In February 2011, Petitioner filed a *pro se* motion for a reduction of his sentence in the state court. (R. 38-1, Mot. to Reduce Sentence at 193-95.) In May 2011, the motion was denied. (R. 16-3, State Ct. Dkt. at 11.)

## PROCEDURAL HISTORY

On October 6, 2011, Petitioner tendered his federal Petition for mailing. (R. 7, Pet. at 7.) Giving the Petition liberal construction, he raises the following claims: (1) he should not have been found guilty because no one was injured in the fire except him; (2) the state court should have appointed counsel to file a petition for leave to appeal to the Illinois Supreme Court on his behalf; (3) the U.S. Supreme Court erred in declining to overturn the state court's denial of his

motion to reduce his sentence;[2] and (4) he is deserving of clemency or a reduction in his sentence. (*Id.* at 5-6.)

In February 2012, Respondent moved to dismiss the Petition on grounds of untimeliness. (R. 16, Resp't's Mot. to Dismiss.) As the Respondent pointed out, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") contains a one-year deadline for seeking federal habeas relief. *See* 28 U.S.C. § 2244(d). Petitioner's claims did not turn on newly-discovered facts or a newly-recognized constitutional right, nor did he allege that the state prevented him from filing his Petition on time. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Accordingly, the one-year limitations period for seeking federal habeas relief began running in Petitioner's case when his conviction became final in state court. *See* 28 U.S.C. § 2244(d)(1)(A). Under AEDPA, Petitioner's conviction became final on August 24, 2009, when the time for Petitioner to seek review in the Illinois Supreme Court expired. *See* Ill. S. Ct. R. 315(b)(1) (petition for leave to appeal in the Illinois Supreme Court must be filed within 35 days after entry of appellate court's judgment); *Gonzalez v. Thaler*, 132 S. Ct. 641, 655-56 (2012) (when a habeas petitioner does not complete all levels of state review, his conviction becomes final for purposes of AEDPA when the time for seeking further review expires). Petitioner had one year from that date—or until August 24, 2010—to file a federal petition. *See* 28 U.S.C. § 2244(d)(1). His Petition filed in October 2011 was therefore untimely by more than a year. Accordingly, on February 22, 2012, this Court dismissed the Petition as time-barred. (R. 18, Min. Entry.)

Thereafter, Petitioner moved to reconsider, arguing that the Court erred in dismissing the Petition as untimely. (R. 19, Mot. at 2-4.) The Court denied the motion to the extent that

---

[2] The Court notes that it is not clear from the present record whether Petitioner filed a proper petition for writ of certiorari to the U.S. Supreme Court and, if so, what arguments he raised. He states in general terms that the Supreme Court "refused to hear my case." (R. 7, Pet. at 6.)

5

Petitioner challenged the Court's determination that the Petition was untimely. (R. 22, Order at 3.) Nevertheless, because Petitioner noted in his motion that he had mental health problems stemming from a 1981 head injury, the Court concluded that further factual development was needed regarding whether Petitioner might be entitled to equitable tolling of the deadline. (*Id.* at 3-5.) Accordingly, the Court granted the motion in part and appointed counsel to represent Petitioner. (*Id.* at 1, 5.) Petitioner's counsel thereafter moved for appointment of an expert to conduct a psychiatric evaluation of Petitioner. (R. 24, Mot. for Appt. of Expert.) The Court granted the motion and appointed Dr. Steven H. Dinwiddie, a psychiatrist at Northwestern University School of Medicine, to conduct a psychiatric evaluation of Petitioner at public expense. (*Id.* at 1; R. 27, Min. Entry.)

On February 3, 2014, Dr. Dinwiddie evaluated Petitioner. (R. 32-1, Dr. Dinwiddie's Report at 2.) The doctor also reviewed approximately 350 pages of documents written by Petitioner which were provided to him by Petitioner's counsel. (*Id.* at 1-2.) Based on his evaluation, Dr. Dinwiddie concluded that Petitioner suffers from cognitive impairments that are "known to be associated with schizophrenia." (*Id.* at 9.) He further concluded that Petitioner's symptoms "were more likely than not present during the one-year period of limitations beginning on August 24, 2009," and that Petitioner's mental issues "substantially impaired his ability to comply with the filing deadline in question[.]" (*Id.*)

Based on Dr. Dinwiddie's report, Petitioner moves for equitable tolling of the deadline. (R. 32, Pet'r's Mot. at 1.) In essence, he requests that the Court accept his Petition filed in October 2011 as timely and proceed to the merits. (*Id.*) Respondent objects to the motion, arguing that Petitioner has failed to establish that he is entitled to equitable tolling notwithstanding his mental health issues. (R. 33, Resp. to Pet'r's Mot.)

6

## LEGAL STANDARD

Under AEDPA, a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This deadline is not jurisdictional, however, and is subject to equitable tolling in appropriate circumstances. *Holland v. Florida*, 560 U.S. 631, 649 (2010). A petitioner is entitled to equitable tolling if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (citation and internal quotation marks omitted). It is the petitioner's burden to establish that he is entitled to tolling. *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014). Whether a petitioner is entitled to tolling is a "highly fact-dependent" determination, which requires the Court to employ "flexible standards on a case-by-case basis." *Id.* at 684 (citation omitted). Tolling is to be sparingly granted, however, and is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Id.* (citation omitted).

## ANALYSIS

Petitioner argues that he is entitled to equitable tolling due to his mental health problems. (R. 32, Pet'r's Mot. at 1-3.) The U.S. Court of Appeals for the Seventh Circuit recently joined several other Circuits in holding that mental incompetence can satisfy the standard for equitable tolling. *Davis v. Humphreys*, 747 F.3d 497, 499 (7th Cir. 2014); *see also Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011); *Bills v. Clark*, 628 F.3d 1092, 1101 (9th Cir. 2010); *Riva v. Ficco*, 615 F.3d 35, 40 (1st Cir. 2010); *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010); *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009). In doing so, the Seventh Circuit rejected the broad argument that "anyone whose shortcomings play a causal role in a delayed filing is entitled to tolling." *Davis*, 747 F.3d at 499. If that were the standard, "then almost everyone who failed

to meet a statutory deadline would be entitled to tolling, and statutes of limitations would be eviscerated." *Id.* Indeed, as the Seventh Circuit noted, "[m]any people of normal intellect are unable to cope with the legal system," and as a general matter a litigant's *pro se* status or lack of knowledge of the law do not justify tolling. *Id.*

Thus, to establish an entitlement to equitable tolling based on mental incompetence, "[s]omething more than but-for causation is essential." *Id.* at 500. Because the *Davis* case had to be remanded for further factual development, the Court declined to articulate the appropriate legal standard that would apply. *Id.* Regardless of the appropriate standard, however, the Seventh Circuit declined to hold that the petitioner, who was illiterate and scored 49 on an IQ test, was entitled to equitable tolling as a matter of law. *Id.* It was possible that petitioner had feigned incompetence on the test, or that perhaps he had "limited abstract intelligence but greater concrete intelligence." *Id.* The Court found it "improper to leap from one IQ test to a conclusion that a particular person is unable to understand and protect his own legal interests." *Id.* Accordingly, the case was remanded "so that the district court can take evidence and determine just what Davis's abilities are," as well as to consider the appropriate legal standard.[3] *Id.*

In a case decided before *Davis*, the Seventh Circuit suggested that mental illness will provide a basis for equitable tolling "only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Obriecht v. Foster*, 727 F.3d 744, 750-51 (7th Cir. 2013) (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)). In *Obriecht*, the Court concluded that the petitioner did not meet this standard because he had attended to other legal matters during the limitations period, including filing direct appeals and collateral attacks in other criminal cases. *Id.* In the Court's view, the

---

[3] On remand, the District Court scheduled an evidentiary hearing to be held on March 3, 2015. *Davis v. Foster*, No. 12 C 680 (E.D. Wis. Order Dated Jan. 13, 2015).

8

petitioner "offered no explanation for how he was able to file in those cases but not in this one." *Id.* at 751. Therefore, he failed to demonstrate an entitlement to equitable tolling. *Id.*

Other Circuits have similarly held that "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations" in the habeas context. *Ata*, 662 F.3d at 742; *see also Bolarinwa*, 593 F.3d at 232 ("mental illness does not toll a filing deadline *per se*"); *Hunter*, 587 F.3d at 1308 ("[M]ental impairment is not *per se* a reason to toll a statute of limitations."). Rather, the petitioner must establish a "causal link between the mental condition and untimely filing[.]" *Ata*, 662 F.3d at 742. To do so the petitioner must show "that her particular disability constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so." *Bolarinwa*, 593 F.3d at 232; *see also Riva*, 615 F.3d at 40 (mental illness constitutes extraordinary circumstance warranting equitable tolling only where the petitioner "suffered from a mental illness or impairment that so severely impaired his ability either effectively to pursue legal relief . . . [on his own] or, if represented, effectively to assist and communicate with counsel").

Applying those standards here, the Court concludes that Petitioner has failed to establish that his Petition should be deemed timely under the doctrine of equitable tolling. The Court is aware from Dr. Dinwiddie's report that, regrettably, Petitioner had a very difficult childhood. (*See* R. 32-1, Dr. Dinwiddie's Report at 2-3.) Dr. Dinwiddie's evaluation also revealed that Petitioner suffers from mental impairments, although whether they stem from mental illness or Petitioner's long-time, heavy substance abuse is not entirely clear. (*See id.* at 3-4.) The Court accepts Dr. Dinwiddie's conclusion that Petitioner suffers from mental impairments, but that alone does not entitle him to tolling; instead, Petitioner must show that his mental health issues

prevented him from filing his Petition before October 2011. *See Socha*, 763 F.3d at 683; *Obriecht*, 727 F.3d at 751.

The Court has carefully and thoroughly reviewed the documents relied on by Dr. Dinwiddie, which consist primarily of letters, court filings, and other documents written by Petitioner. (*See* R. 38, Pet'r's Resp. to Ct. Order.) The Court agrees with Dr. Dinwiddie that many of these documents evidence a confused and disorganized thought process. However, most of the documents are dated 2013 or are not dated at all. (*See* R. 38-1, Documents at 1-200; R. 38-2, Documents at 1-153.) A cover letter sent by Petitioner's counsel on February 20, 2014, when he transmitted the documents to Dr. Dinwiddie, states that Petitioner sent the documents to counsel "in the past 12 months." (R. 38-1, Letter at 73.) Documents written after the Petition was filed shed little light on the question of whether mental health issues prevented Petitioner from filing his federal Petition prior to October 2011.

The Court also considers Dr. Dinwiddie's opinion that Petitioner's mental health problems likely dated back to the age of 21. (R. 32-1, Dr. Dinwiddie's Report at 8.) That was long before Petitioner stood trial in this case.[4] Yet Petitioner was found to be competent by two different doctors notwithstanding his mental health problems. (R. 16-2, Ill. App. Ct. Order at 1-3.) Unfortunately, Dr. Dinwiddie's report does not discuss the impact of these medical opinions on his own conclusions. The limited records before the Court also suggest that Petitioner was an active participant during the trial proceedings, raising issues with the court when he felt it necessary, including complaining about various aspects of his counsel's performance. (*See id.* at 2-5.)

---

[4] A document before the Court reflects that Petitioner was born in 1963, making him 51 years old. (R. 16-1, Order of Commitment at 1.)

Importantly, Dr. Dinwiddie's report does acknowledge that Petitioner was capable of filing coherent court documents. (R. 32-1, Dr. Dinwiddie's Report at 6; *see also* R. 38-1, Mot. to Reduce Sentence at 193-95.) Specifically, on February 24, 2011, Petitioner tendered for mailing a *pro se* motion for reduction of his sentence with the state court. (R. 38-1, Mot. to Reduce Sentence at 193-95.) A review of this document reveals that Petitioner properly completed the form and accurately listed his offense of conviction, the length of his sentence, the year his sentence was imposed, the fact that a bench trial had been held, and the full name of the judge who imposed the sentence. (*Id.* at 194.) The motion also contained an argument in support of Petitioner's request which, although not lengthy, was coherent and reasonable. (*Id.* at 194-95.) He argued as follows:

> No one got hurt from the fire, but me. No building got burn[ed] down . . . . I did almost 7 years, for a lesson to be learn[ed]. 25 years is two [sic] much time for this case. I am very sorry this happen[ed], but need relief. I need two [sic] find my life again, or die.

(*Id.*) Dr. Dinwiddie acknowledged that this filing "did not contain delusional content and did not reflect a disorganized thought process." (R. 32-1, Dr. Dinwiddie's Report at 7.) The doctor also noted that, although Petitioner has some "idiosyncratic" views on the law, he is "capable of completing basic legal forms and comprehending some aspects of the law." (*Id.* at 9.)

Thus, even if the Court presumes that Petitioner has mental impairments, and that he was incapable of filing a federal petition between August 2009 and August 2010, the record shows that he was capable of filing a coherent court document as of February 2011. (*See* R. 38-1, Mot. to Reduce Sentence at 192-95.) Yet, Petitioner did not file his federal Petition until October 2011. The doctrine of equitable tolling required Petitioner to be diligently pursuing his rights. *See Socha*, 763 F.3d at 683. Petitioner has provided no basis for the Court to toll the deadline during the eight-month period between February 2011 and October 2011. Nor has he provided

any explanation of the change in his mental health circumstances in October 2011 that suddenly rendered him capable of obtaining, completing, and filing the proper form for seeking federal habeas relief with this Court.

This factual chronology, which is not disputed by Dr. Dinwiddie, demonstrates that Petitioner has failed to show an entitlement to equitable tolling. *See Obriecht*, 727 F.3d at 750-51 (petitioner was not entitled to tolling based on mental illness where he was adjudicated competent to represent himself in state court and was able to attend to other legal matters during the relevant period); *Knol v. Chandler*, No 13 C 4938, 2014 WL 1243793, at *5-*6 (N.D. Ill. Mar. 25, 2014) (Holderman, J.) (rejecting petitioner's argument that a progressive mental illness which he claimed prevented him from filing a federal petition during the limitations period "miraculously abated" so that he could file state court actions following the expiration of the federal deadline); *United States ex rel. Adujar v. Pierce*, No. 10 C 4168, 2010 WL 4628765, at *4 (N.D. Ill. Nov. 8, 2010) (Lindbergh, J.) (petitioner was not entitled to equitable tolling despite his extensive history of mental illness, where record showed he was capable of filing other court documents prior to the date he filed his federal petition); *United States ex rel. Flowers v. Gaetz*, No. 09-1303, 2010 WL 529443, at *8 (N.D. Ill. Feb. 10, 2010) (Pallmeyer, J.) ("[I]t strains credulity to suggest that, while Petitioner was capable of filing state *pro se* petitions in 2003 and 2007, he was somehow incapable of filing a timely federal habeas petition in the interim.").

Additionally, the Court has reviewed Petitioner's prison medical records, and while they are somewhat sparse, they reflect that Petitioner was evaluated and prescribed psychiatric medications upon his arrival at the Illinois Department of Correction in 2007. (R. 38-1, Medical Records at 124.) The records also reflect that Petitioner was seen by medical staff in May 2010, and his medications were renewed. (*Id.* at 184.) A medical examination in September 2011

noted that Petitioner was currently taking psychiatric medications and that his mental status was found to be normal. (*Id.* at 130.) Petitioner was seen again by medical staff in November 2011, and his medications were again renewed. (*Id.* at 96.) Although it appears from these records that Petitioner may have refused his medications on occasion and otherwise failed to cooperate with medical staff (*see* R. 38-2, Medical Records at 136-42), the fact that he was receiving treatment for his mental health issues during this period weighs against tolling.[5] *See Miller*, 77 F.3d at 192 ("[M]ost mental illnesses today are treatable by drugs that restore the patient to at least a reasonable approximation of normal mentation and behavior"); *Jackson v. Hardy*, No. 12 C 1454, 2013 WL 1385667, at *3-*4 (N.D. Ill. Apr. 3, 2013) (Der-Yeghiayan, J.) (declining to apply equitable tolling where petitioner was receiving mental health treatment during the limitations period, and prison records showed that he was alert and oriented and engaged in regular activities); *United States ex rel. Boyd v. Pierce*, No. 08 C 4257, 2010 WL 3731251, at *6 (N.D. Ill. Sept. 17, 2010) (Gettleman, J.) (declining to apply equitable tolling despite petitioner's claim that he was in a "deep depression" that prevented him from timely filing his petition, where petitioner's medical records showed that he was receiving medications during this period and his therapist described him as "alert," "oriented," and "cooperative").

Based on the record, Petitioner has failed to demonstrate that his mental illness prevented him from filing a federal habeas Petition before October 2011. Accordingly, the Petitioner's motion to deem the Petition timely under the doctrine of equitable tolling will be denied.

---

[5] Dr. Dinwiddie's report noted that at the time of the February 2014 evaluation, Petitioner was actively refusing all his medications. (R. 32-1, Dr. Dinwiddie's Report at 7.) The doctor noted impairments in Petitioner's concentration and thought content, but he described Petitioner as "generally cooperative," "not hostile," and showing "no evidence of tics [or] tremor[.]" (*Id.*) He also noted that Petitioner was "alert and fully oriented" during the evaluation. (*Id.*)

13

# CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Even if a petitioner shows that reason jurists could debate the Court's procedural ruling, to obtain a certificate of appealability, he must also make a colorable showing as to the merits of his claims. *Id.*; *Peterson v. Douma*, 751 F.3d 524, 530-31 (7th Cir. 2014).

Applying those principles here, the Court declines to grant Petitioner a certificate of appealability. As outlined above, the Petition was untimely by more than a year, and while Petitioner's mental health issues are unfortunate, he has not established the type of extraordinary circumstances that would warrant equitable tolling. Even if he could overcome this barrier, he has not made a strong showing on the merits. As a threshold matter, Petitioner's claims do not appear to be based on violations of the U.S. Constitution or other federal law; as such they would

not be cognizable on federal habeas review.[6] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal law). Even if the claims were found to be cognizable, it does not appear that Petitioner exhausted any of them in one complete round of state review, which would present an additional barrier to federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]"); *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) ("To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings . . . . including levels at which review is discretionary rather than mandatory."). For these reasons, the Court declines to grant Petitioner a certificate of appealability.

---

[6] Claim two comes closest to invoking a federal constitutional right, as Petitioner appears to argue that he was entitled to counsel to assist him in filing a petition for leave to appeal to the Illinois Supreme Court on direct appeal. (R. 7, Pet. at 5.) The Supreme Court has held, however, that there is no right to counsel beyond the first level of direct review. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Wainwright v. Torna*, 455 U.S. 586, 587 (1982) ("a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals").

## CONCLUSION

For the foregoing reasons, the Court DENIES Petitioner's motion to allow equitable tolling (R. 32). The Petition is DISMISSED WITH PREJUDICE as untimely. The Court DENIES Petitioner a certificate of appealability. The Clerk is DIRECTED to enter judgment consistent with this order. The Court expressly conveys its gratitude to Petitioner's counsel for his dedicated presentation of the issues in this case, which is in keeping with the highest principles served by our District's Trial Bar program.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: January 20, 2015